NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN HARRIS,<br><br>             Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | Civil Action No.: 11-cv-2961 (ES)<br><br>**OPINION** |

<u>**SALAS, District Judge**</u>

Before the Court is an appeal filed by John Harris ("Claimant" or "Mr. Harris") seeking review of the Administrative Law Judge's ("ALJ") decision denying Claimant's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act and for disability benefits under Title II and Title XVIII of the Social Security Act. The Court has considered the submissions in support of and in opposition to the present application, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). Based on the reasons that follow, the Court vacates the ALJ's judgment and will remand this matter to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Court's Opinion.

## I.      Background and Procedural History

Claimant is a forty-five year old man who claims to suffer from residual effects of spinal surgery including back pain, right leg, knee, ankle and foot pain, and a noticeable limp. (R. at

14).[1]  Mr. Harris applied for SSI and disability benefits on October 28, 2008 (when he was forty-one years old), and is alleging disability since January 1, 2006.[2]  (R. at 10, 97).  Mr. Harris's application for SSI and disability benefits was initially denied on February 9, 2009, and was denied upon reconsideration on May 26, 2009.  (R. at 10).

On June 23, 2009, Claimant requested a hearing before an ALJ.  (R. at 10).  The Office of Disability Adjudication and Review granted Claimant's request, and ALJ Richard L. De Steno heard Claimant's case on June 8, 2010.  (R. at 10).  On June 24, 2010, the ALJ issued a decision determining that Mr. Harris was not disabled under the Social Security Act.  (R. at 7-16).  As a result, the ALJ denied Mr. Harris's request for benefits.  (R. at 7-16).

On July 28, 2010, Mr. Harris filed a Request for Review with the Appeals Council of the Office of Disability Adjudication and Review seeking review of the ALJ's June 24, 2010 decision.  (R. at 6).  On April 13, 2011, the Appeals Council denied Mr. Harris's request.  (R. at 1-3).

On May 24, 2011, Mr. Harris filed a complaint with the United States District Court for the District of New Jersey appealing the ALJ's June 24, 2010 decision denying Mr. Harris's request for benefits.  (*See* Docket Entry No. 1).  The Court received the Administrative Record on September 19, 2011.  (*See* Docket Entry No. 7).  The matter is now ripe for this Court's adjudication.

---

[1] The Court uses the initial "R." to refer to the Administrative Record.
[2] The Court notes that Claimant's Application Summary for Supplemental Security Income indicates that Claimant's disability began on October 9, 2008.  (R. at 88).  The Court is unable to resolve this discrepancy, and will rely on the ALJ's statement that Claimant's disability began on January 1, 2006.  (R. at 10).  This fact is not material to the Court's analysis.

## II.     Relevant Medical Records

### A.     Physical Examinations

#### 1.     Orthopedic Consultative Examination—Mariam Rubbani, M.D.

On January 12, 2009, Dr. Rubbani examined Mr. Harris.  (R. at 157).  Dr. Rubbani's records indicate that Mr. Harris claimed disability due to residual effects of a spinal surgery in 1988, including problems walking and balancing, and numbness in his left foot.  (R. at 157). During the exam, Mr. Harris reported that he lived alone, did not require assistance with activities of daily living, and did not use a cane.  (R. at 157).  Mr. Harris denied suffering from high blood pressure, diabetes, arthritis, angina, respiratory problems, or heart disease, and did not report taking any medications.  (R. at 157).  In her report, Dr. Rubbani indicated that Mr. Harris was able to dress, undress, and climb onto and off of the exam table on his own.  (R. at 157). She also recorded that Mr. Harris has full range of motion in his shoulders, wrists, and knees, and no muscle weakness.  (R. at 157).  Dr. Rubbani noted that Mr. Harris suffers from pes varus[3] and a bunion in his right foot, and that his gait is flat-footed and not at a reasonable pace.  (R. at 157).

In addition, Dr. Rubbani determined that Mr. Harris's hip ranging is limited bilaterally, his ankle ranging is significantly limited bilaterally, and his lumbar spine ranging is somewhat limited in forward flexion.  (R. at 157-58).  Finally, Dr. Rubbani concluded that Mr. Harris cannot squat, cannot walk on his heels or toes, and experiences decreased sensation in his legs to light touch.  (R. at 158).  X-rays of Mr. Harris's left ankle and left knee showed normal impressions, and an x-ray of Mr. Harris's right knee revealed mild degenerative osteoarthritis. (R. at 161).  An x-ray of Mr. Harris's spine showed spondylosis deformans of the lower thoracic

---

[3] Pes varus is a deformity of the foot, where the heel is turned inward from the midline of the leg.  (Cl. Moving Br. at 10 (citing Mosby's Medical Dictionary (Elsevier Medical Publications ed., 8th ed. 2009))).

and lumber spine.  (R. at 161).

### 2. Physical Residual Functional Capacity Assessment—Arthur Pirone, M.D.

Dr. Pirone completed a Physical Residual Functional Capacity ("RFC") Assessment on January 30, 2009.  (R. at 171).  In analyzing the entirety of Mr. Harris's file, Dr. Pirone determined that  Mr. Harris could occasionally lift and/or carry twenty pounds, could frequently[4] lift and/or carry ten pounds, and had otherwise unlimited capacity to push and/or pull.  (R. at 165).  Dr. Pirone also found that Mr. Harris could stand and/or walk with normal breaks for at least two hours in an eight-hour workday, and sit with normal breaks for about six hours during an eight-hour workday.  (R. at 165).  In support of his findings, Dr. Pirone noted Mr. Harris's 1988 spinal surgery, and recorded that Mr. Harris suffered from back, ankle and knee pain, and hyper-reflexia.  (R. at 165).  Dr. Pirone indicated that Mr. Harris exhibited an abnormal gait and a limited range of motion in both ankles.  (R. at 165).  He also noted that Mr. Harris could care for himself, walk, and travel independently.  (R. at 165).  Dr. Pirone concluded that Mr. Harris had no difficulty sitting or using his upper extremities, and could walk effectively without an assistive device.  (R. at 166).

Dr. Pirone next assessed Mr. Harris's postural limitations.  In doing so, Dr. Pirone indicated that Mr. Harris could never climb ropes, ladders or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (R. at 166).  Dr. Pirone found no manipulative, visual, communicative, or environmental limitations.  (R. at 167-68).  Dr. Pirone disagreed with Dr. Rubbani's indication that Mr. Harris could not walk at a reasonable pace.  (R. at 170).  He determined that based on Mr. Harris's level of functionality, he is an

---

[4] "Frequently means occurring one-third to two-thirds of an eight hour workday (cumulative, not continuous). Occasionally means occurring from very little up to one-third of an 8-hour workday (cumulative, not continuous)." (R. at 164).

"independent community ambulatory without an assistive device."  (R. at 170).  Dr. Pirone's assessment was reviewed and affirmed in its entirety by Toros Shahinian, M.D., on May 26, 2009.  (R. at 177).

### B.       Psychological Examinations

On February 3, 2009, Dr. Tan conducted a mental status examination on Mr. Harris.  (R. at 172).  Dr. Tan noted that Mr. Harris reported experiencing slight depression, but determined that no treatment or medication was required.  (R. at 172).  Dr. Tan indicated that Mr. Harris reported no problems understanding, concentrating, remembering or completing tasks.  (R. at 172).

## III.    Legal Standards

### A.       Standard for Awarding Benefits

To qualify for Social Security benefits, the claimant must first establish that he is "disabled."  42 U.S.C. § 1381.  "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period."  *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citations and quotations omitted).  A claimant is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i)  At the first step, we consider your work activity, if any. If  you
> are  doing  substantial gainful activity, we will find that you are not

disabled. . . .

(ii)  At the  second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled. . . .

(v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 404.1520(a)(4).

**B.    Burden of Proof**

The five-step sequential evaluation process involves a shifting burden of proof.  *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  At step one, the claimant has the burden of establishing that he has not engaged in "substantial gainful activity" since the onset of the alleged disability, and at step two that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  If the claimant is able to demonstrate both that he has not engaged in substantial gainful activity and that he suffers from a severe impairment, then the claimant must demonstrate—at step three—that his impairments are equal to or exceed one of the impairments listed in Appendix 1 of the

regulations.  20 C.F.R. § 404.1520(d).  If he is able to make this showing then he is presumed

disabled.  If he cannot show that he meets or exceeds a listed impairment, then at step four he

must show that his residual functional capacity does not permit him to return to his previous

work.  20 C.F.R. § 404.1520(e).  If the claimant meets this burden, then at step five, the burden

shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful

work.  20 C.F.R. § 404.1520(g).  If the Commissioner cannot meet this burden then the claimant

shall receive disability benefits.

### C.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405

(g).  The Court must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g) and 1383(c)(3); *see also Stunkard v. Sec'y of Health & Human

Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.

Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)).

In reviewing the ALJ's decision, where there is conflicting evidence, the ALJ "must

adequately explain . . . his reasons for rejecting or discrediting competent evidence."  *Ogden v.

Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d

Cir. 1986)).  Also, the Court is bound by the ALJ's findings that are supported by substantial

evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*,

181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court is limited in its review in that it cannot

"weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v.*

*Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (internal citation omitted).

**IV.     The ALJ's Findings and Final Determination**

At step one, the ALJ found that Mr. Harris "has not engaged in substantial gainful activity since October 18, 2008," the day he applied for disability benefits.  (R. at 12).

At step two, the ALJ determined that the Claimant has severe impairments involving "residual effects of lumbar surgery and lumbar spondylosis," and that these impairments have lasted "for a continuous period of more than 12 months."  (R. at 12).

At step three, the ALJ found that Claimant "does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (R. at 12).  In reaching that conclusion, the ALJ consulted Listing 1.04, entitled "Disorders of the Spine," (R. at 13), which requires the claimant to produce evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.  20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04.  The ALJ determined that "the medical evidence does not support a finding of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis."  (R. at 13).  Accordingly, the ALJ found that "the claimant has failed to meet or equal the criteria of listing 1.04."  (R. at 13).

As part of the step four analysis, after considering the entire record, the ALJ found that "[C]laimant has the residual functional capacity for…the full range of sedentary work," and that Claimant could "lift[] and carry[] objects weighing up to 10 pounds; sit[] up to six hours, and stand[] and walk[] up to two hours in an eight-hour day."  (R. at 13).  The ALJ also determined that "[C]laimant has not had any significant non-exertional limitations."  (R. at 13).

At step four, the ALJ recognized that the exertional demands of Claimant's past work as a film processor require more than the full range of sedentary work, exceeding Claimant's

residual functional capacity.  (R. at 15).  The ALJ concluded that "[C]laimant is unable to perform any past relevant work," (R. at 15), and proceeded to step five.

At step five, the ALJ considered Claimant's age, education, work experience, and residual functional capacity in conjunction with the Medical Vocational Guidelines to determine that "there are jobs that exist in significant numbers in the national economy that the [C]laimant can perform."  (R. at 15).  Consequently, the ALJ concluded that Mr. Harris was not disabled within the meaning of the Social Security Act.  (R. at 15).

## V.     Analysis

On appeal, Mr. Harris argues that the ALJ's decision contained the following deficiencies: (1) at step three, the ALJ erred in determining that Mr. Harris did not suffer from any listed impairments (Docket Entry No. 10, Brief in Support of Plaintiff John Harris ("Cl. Moving Br.") at 8-16); (2) Mr. Harris's residual functional capacity as identified by the ALJ ran contrary to evidence of record (*id.* at 16-22); (3) at step five, the ALJ failed to elicit the required vocational expert testimony because Mr. Harris demonstrated nonexertional impairments (*id.* at 22-29); and (4) the ALJ failed to sufficiently evaluate Mr. Harris's subjective complaints of pain (*id.* at 29-33).  Conversely, the government contends that the Commissioner's decision must be affirmed because it is "supported by substantial evidence."  (Docket Entry No. 13, Defendant's Brief Pursuant to Local Civil Rule No. 9.1 ("Def. Opp. Br.") at 1).  Below, the Court addresses each alleged deficiency in turn.

### A.     Step Three: Listed Impairments

The Court first assesses the ALJ's analysis at step three.  Specifically, the Court must determine whether substantial evidence on the record exists to support the ALJ's finding that Claimant did not exhibit any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.

In order to determine whether a claimant suffers from a listed impairment under 20 C.F.R. pt. 404, subpt. P, app. 1, an ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to preclude any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004). If claimant's impairments, or combination of impairments, are medically equivalent to a listed impairment, then he is disabled. 20 C.F.R. § 404.1525-26. The ALJ is required to "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).

Mr. Harris argues that the ALJ's determination that he does not suffer from a listed impairment is deficient. Specifically, Mr. Harris contends that substantial evidence on the record supports a finding that he suffers from a combination of impairments that are medically equivalent to nerve root compression and spinal arachnoiditis, which are both listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Cl. Moving Br. at 11-15). Conversely, the government contends that Mr. Harris failed to establish that his condition is equivalent to a listed impairment, and that therefore a conclusory analysis by the ALJ is harmless error. (Def. Opp. Br. at 5-6).

The Court finds that the ALJ's step three analysis is flawed because the ALJ failed to properly consider whether Mr. Harris's combination of impairments are medically equivalent to a listed impairment. In his step three analysis, the ALJ thoroughly explains the impairments included in listing 1.04 of 20 C.F.R. pt. 404, subpt. P, app. 1: nerve root compression, spinal arachnoiditis, and lumbar spinal stenosis. (R. at 12). The ALJ then concludes that "[i]n the instant case, the medical evidence does not support a finding of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. Accordingly, the claimant has failed to meet or equal the criteria of listing 1.04." (R. at 13). This analysis suffers three flaws. First, the ALJ's analysis is conclusory and does not set forth the reasons for his decision. *See Burnett*, 220 F.3d

at 119 (citing *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)) (the Third Circuit "requires [an] ALJ to set forth the reasons for his decision"); *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008) ("This Court requires the ALJ to set forth the reasons for his decisions."); *Centeno v. Comm'r of Soc. Sec.*, No. 09-6023, 2010 U.S. Dist. LEXIS 128306, at *10, 11 (D.N.J. Dec. 6, 2010) ("[T]he ALJ must provide a discussion of the evidence and an explanation of her conclusion sufficient to enable meaningful judicial review.").  Second, the ALJ failed to consider whether Mr. Harris's combined medical impairments are analogous to an Appendix 1 listing.  To that end, the Court cannot determine whether the combined effect of Mr. Harris's impairments would be medically equivalent to an Appendix 1 listing.  *See Burnett*, 200 F.3d at 122 ("[T]he ALJ must consider the combined effect of multiple impairments, regardless of their severity.").  Finally, the ALJ's conclusory analysis does not allow for meaningful judicial review.  *See Burnett*, 220 F.3d at 119 (stating that an ALJ's "conclusory" one-sentence step-three analysis was "beyond meaningful judicial review"); *Torres*, 279 F. App'x at 152 ("[C]onclusory statements, like the one in this case, have been found to be beyond meaningful judicial review." (internal quotations omitted)).

For these reasons, the Court's reviewing function is constrained.  Therefore, the Court will remand this matter to the Commissioner for further development of the record and an analysis that is consistent with the requirements mandated by the Third Circuit.

### B.   Step Four: The ALJ's Residual Functional Capacity Assessment

Mr. Harris contends that the ALJ provides no explanation for his finding that Mr. Harris could perform the full range of sedentary work, and that the record does not contain substantial evidence to support such a finding.  (Cl. Moving Br. at 16-22)  Specifically, Mr. Harris contends that the ALJ failed to consider his nonexertional limitations, including his postural limitations

and the numbness in his legs, and his limited ability to walk in determining his residual functional capacity. (*Id.* at 20-22). The government argues that the ALJ's RFC assessment was "adequately explained and supported," and that the record did not contain evidence that Mr. Harris suffered from any nonexertional impairments. (Def. Opp. Br. at 9-10). The Court is not persuaded by the government's argument.

At step four, the ALJ must determine, based on all the relevant medical and other evidence in the record, what work the claimant is still capable of performing despite any limitations. 20 C.F.R. § 416.945(a)(1). The ALJ's analysis requires a complete assessment of the claimant's physical and mental functional limitations based on relevant medical and nonmedical evidence of a claimant's impairments. *Id.* If the ALJ decides to reject any evidence, medical or otherwise, he must provide reasons for the rejection to enable meaningful judicial review. *Burnett*, 220 F.3d at 122. Where contradictory evidence exists, the ALJ must resolve the discrepancy and provide a full explanation to support that resolution. *Id*. at 121-22.

The Court first assesses whether the ALJ properly considered evidence of Mr. Harris's inability to walk effectively. There is a discrepancy in the record with respect to this issue. Dr. Rubbani found that Mr. Harris's "[g]ait [was] not at a reasonable pace." (R. at 157). Conversely, Dr. Pirone found that Mr. Harris is "an independent community ambulator without an assistive device." (R. at 170). The ALJ found the reports of both Dr. Rubbani and Dr. Pirone "well supported and not inconsistent with the other substantial evidence," and used them to justify his determination that Mr. Harris was capable of performing the full range of sedentary work. (R. at 14). However, the ALJ failed to acknowledge or resolve the discrepancy between those reports before making that determination. Thus, the ALJ's assessment of Mr. Harris's RFC is inadequate.

Next, the Court considers whether the ALJ properly accounted for Mr. Harris's nonexertional limitations in his evaluation of Mr. Harris's residual functional capacity. At step four, the ALJ determined that "[C]laimant did not have any significant non-exertional limitations." [5]  (R. at 14). However, the ALJ provides no evidence or explanation to support this determination. He simply states that he has "made this determination having reviewed all of the medical evidence available and after hearing the claimant's testimony." (R. at 14).

In fact, the record does contain evidence that Mr. Harris suffers from a nonexertional limitation. Dr. Pirone found that Mr. Harris could only occasionally balance, stoop, kneel, crouch, crawl, and climb a ramp or stairs, and that Mr. Harris could never climb a ladder, rope or scaffolds. (R. at 166). While the ALJ is not required to accept this evidence, he is required to explain why he discredits it. *Burnett*, 220 F.3d at 122. Here, the ALJ provided no explanation as to why he did not accept Dr. Pirone's assessment of Claimant's nonexertional limitations. (R. at 14). In fact, the ALJ never acknowledges the relevant portion of Dr. Pirone's assessment. For these reasons, the Court remands this issue to the Commissioner for further development of the record and a determination that is consistent with this Opinion.

## C.    Step Five: ALJ's Reliance On Medical Vocational Guidelines Instead of Vocational Expert Testimony.

Mr. Harris argues that the ALJ erred in failing to elicit vocational expert testimony because the record demonstrates that he suffers from nonexertional limitations. (Cl. Moving Br. at 22-29). Conversely, the government contends that the medical evidence does not establish that Mr. Harris suffers from a nonexertional impairment, and that therefore vocational expert

---

[5] Nonexertional limitations are limitations or restrictions that "affect only your ability to meet the demands of jobs rather than strength demands." 20 C.F.R. § 416.969a(c)(1). Some examples of nonexertional limitations include: (i) mental conditions such as depression; (ii) difficulty maintaining attention or concentration; (iii) difficulty understanding or remembering detailed instructions; (iv) difficulty seeing or hearing; (v) difficulty tolerating some physical feature(s) of certain work setting; or (vi) difficulty performing the postural functions of some work. *Id.*

testimony was not required.  (Def. Opp. Br. at 13).

When a claimant suffers from strictly exertional limitations, a vocational expert is not necessary to determine whether jobs exist in the national economy that claimant can perform. *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984).   However, when a claimant suffers from both severe exertional limitations and severe nonexertional limitations, vocational expert testimony is required.  *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982).  Additionally, if a nonexertional impairment exists, "the Commissioner cannot determine that [it does] not significantly erode [claimant's] occupational base under the medical-vocational guidelines without . . . taking additional vocational evidence."  *Sykes v. Apfel*, 228 F.3d 259, 261 (3d Cir. 2000).

As previously discussed, the ALJ did not properly assess Mr. Harris's nonexertional limitations at step four.   Consequently, the Court cannot meaningfully determine whether vocational expert testimony was required in this case.   Therefore, the Court will remand this matter to the Commissioner for further development of the record and an analysis that is consistent with the requirements mandated by the Third Circuit.

### D.     ALJ's Consideration of Subjective Complaints of Pain

The Court must next determine whether the ALJ sufficiently evaluated Claimant's subjective complaints of pain.  Mr. Harris argues that the ALJ failed to conduct such an analysis. (Cl. Mov. Br. at 33).  Conversely, the government contends that the ALJ properly evaluated Mr. Harris's subjective complaints of pain in relation to the evidence of record.  (Def. Opp. Br. at 12).  The Court finds that the government's argument has merit.

The Third Circuit established the following four-part test to determine the credibility of a social security claimant's subjective complaints.  That test requires:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits and may be disabling; (3) that when such complaints are supported by medical evidence, they should be given great weight; and finally (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (citations and quotations omitted).

Although the ALJ is required to consider the claimant's subjective complaints of pain, the ALJ may reject these complaints when inconsistent with objective medical evidence or other evidence in the record. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). The Third Circuit recognizes the "acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). Therefore, an ALJ's failure to explain rejection of probative evidence amounts to error in the Third Circuit. *Id.* at 707. Similarly, although the ALJ has discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant," *Brown v. Schweiker*, 562 F. Supp. 284, 287 (E.D. Pa. 1983), if the ALJ concludes that testimony is not credible, he must indicate the basis for that conclusion in his decision. *Cotter*, 642 F.2d at 705–06.

Here, in reaching his decision, the ALJ expressly "considered all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. at 13). The ALJ then explained, by way of specific examples in the record and Mr. Harris's testimony during the hearing, that although Claimant's impairments could be expected to cause the symptoms he alleged, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (R. at 13).

Specifically, the ALJ based his credibility determination on the fact that Mr. Harris's subjective complaints of pain were inconsistent with objective medical evidence.  Mr. Harris testified that he was unable to sit comfortably for more than fifteen minutes.  (R. at 33).  However, the ALJ points to Dr. Pirone's report, which indicated that Mr. Harris experienced no difficulty sitting, and that he is able to sit, with normal breaks, for up to six hours in an eight hour workday.  (R. at 14, 165-66).  The ALJ found that because of this inconsistency, Mr. Harris's testimony was not credible.  (R. at 13).

For these reasons, the Court finds that the ALJ properly considered Mr. Harris's subjective complaints of pain.  Therefore, the Court will not remand this issue to the Commissioner.

## VI.    Claim of Bias and Request for a Different ALJ on Remand

Finally, Mr. Harris claims that the ALJ exhibited bias and that on remand the Commissioner should be ordered to reassign this matter to a different ALJ.  (Cl. Mov. Br. at 33, 35).  The government contends that Mr. Harris fails to point to a specific instance of bias in the ALJ's decision or the hearing transcript.  (Def. Opp. Br. at 14).  The Court finds that Mr. Harris's argument is unfounded.

The Third Circuit has stated that remand to a different ALJ is appropriate where bias against the claimant has been proven.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (citing *Hummel v. Heckler*, 736 F.2d 91 (3d Cir. 1984)).  The Third Circuit has also held that a claimant is entitled to a hearing before a different ALJ where the ALJ exhibited coercive, intimidating and offensive conduct that prevented the claimant from receiving a full and fair hearing.  *Id.* at 904.

Claimant seeks remand to a different ALJ because the ALJ in this case allegedly

manifested bias against claimant's counsel.  (Cl. Moving Br. at 33).  This argument is without

merit.  First, Claimant has not presented the Court with any specific evidence of bias.  Second,

the Court has reviewed the transcripts from the hearings conducted before the ALJ, and discerns

no evidence of coercive, intimidating, and offensive conduct.  Accordingly, this Court finds it

inappropriate at this juncture to remand this matter to a different ALJ.

**VII.     Conclusion**

    For the foregoing reasons, the judgment of the ALJ is vacated and this case is remanded

for further proceedings consistent with this Opinion.  An appropriate order shall accompany this

Opinion.


                                        */s/ Esther Salas*
                                        Esther Salas, U.S.D.J.